UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
**U.S. BANK NATIONAL ASSOCIATION,** *not in its individual capacity but solely as Trustee for the RMAC Trust, Series 2016-CTT*,

                    **Plaintiff,**            **MEMORANDUM
AND ORDER**

       -against-                      20-CV-849 (RPK) (RLM)

**ROHIT NANAN,** *et al.*,

                    **Defendants.**
-----------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

Plaintiff U.S. Bank National Association ("plaintiff" or "U.S. Bank"), in its capacity as Trustee for the RMAC Trust, Series 2016-CTT, brings this diversity action against defendants Rohit Nanan ("Nanan") and the New York City Environmental Control Board (the "Control Board") (collectively, "defendants"), seeking to foreclose a mortgage encumbering real property located at 129-19 145th Street, Jamaica, New York 11436, together with the land, buildings, and other improvements located thereupon (the "Subject Property"). See generally Complaint (Feb. 17, 2020) ("Compl."), Electronic Case Filing ("ECF") Docket Entry ("DE") #1.

Currently pending before this Court, on a referral from the Honorable Rachel P. Kovner, is plaintiff's motion for default judgment against Nanan and the Control Board.[1] See generally Order Referring Motion (Apr. 8, 2022) ("4/8/22 Referral Order"); Motion for

---

[1] Plaintiff has named the Control Board as a defendant and seeks default judgment against it on account of its alleged status as a subordinate lienholder of the Subject Property. See Compl. ¶ 6.

Default Judgment (Apr. 7, 2022) ("Pl. Mot."), DE #19; [Corrective] Memorandum in Support of Motion for Default Judgment (Apr. 7, 2022) ("Pl. Mem."), DE #23.[2]  Plaintiff requests, amongst other things, that the Court enter a judgment of foreclosure and sale with respect to the Subject Property, pursuant to New York Real Property and Proceeding Law ("RPAPL") §§ 1351 and 1354, and award plaintiff $490,687.45 in damages, plus contractual interest at the rate of 3.0 percent per annum until entry of judgment, and post-judgment interest at the statutory rate thereafter.  See Statement of Damages (Apr. 7, 2022) at 1-2, DE #21-11; see generally Proposed Judgment (Apr. 7, 2022), DE #21-12.  For the reasons that follow, plaintiff's motion for default judgment is denied without prejudice.  See, e.g., Zuniga v. Newmark Wood Working Grp. Inc., 20 Civ. 2464 (RPK) (VMS), 2022 WL 3446331, at *4 n.1 (E.D.N.Y. Aug. 17, 2022) ("Because this Court concludes that the motion for default judgment should be denied without prejudice and with leave to [refile], the disposition of this motion is not dispositive of any party's claim or defense. The Court thus proceeds by Order rather than by Report and Recommendation.") (citing 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(a)); accord Sudilovskiy v. City WAV Corp., 22-CV-469 (DG), 2022 WL 4586307, at *1 (E.D.N.Y. Sept. 29, 2022).

## FACTUAL BACKGROUND

On July 14, 2006, Nanan executed and delivered to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for SunTrust Mortgage, Inc. ("SunTrust"), a promissory note in the amount of $403,000 (the "July 14, 2006 Note").  See Declaration of Stephen J.

---

[2] The docket in this matter reflects that, without explanation, plaintiff filed two memoranda of law in support of its motion for default judgment: DE #20 and #23.  Because plaintiff labeled the latter of the two documents as the "corrective" memorandum of law (DE #23), the Court treats that as the operative one.  A comparison of the two documents reveals that the "corrective" memorandum added some record citations.

Vargas, Counsel to Plaintiff (docketed on Apr. 7, 2022) ("Vargas Decl.") ¶ 3, DE #21; see also Exhibit A to Consolidation, Extension, and Modification Agreement ("CEMA") (docketed on Apr. 7, 2022), DE #21-7 at 33[3] (listing Nanan promissory notes and mortgages, including those dated July 14, 2006). To secure repayment of the July 14, 2006 Note, Nanan executed and delivered a mortgage on the Subject Property in the amount of $403,000 (the "July 14, 2006 Mortgage"). See Vargas Decl. ¶ 3, DE #21; Compl. ¶ 10. The July 14, 2006 Mortgage was recorded on August 2, 2006 in the City Register of the City of New York, Queens County, under CRFN 2006000436586. See Compl. ¶ 10. Approximately one year later, on June 22, 2007, Nanan executed and delivered a second promissory note to MERS (as SunTrust's nominee) in the amount of $14,000. See Vargas Decl. ¶ 4, DE #21; see also CEMA Ex. A, DE #21-7 at 33. On the same date, Nanan executed and delivered a second mortgage in the same amount as the second promissory note (the "June 22, 2007 Mortgage"). See Compl. ¶ 11. This mortgage was recorded in the City Register of the City of New York, Queens County, on July 11, 2007, under CRFN 2007000352891. See id.

On June 22, 2007, pursuant to a consolidation, extension, and modification agreement (the "CEMA"), Nanan also executed and delivered a consolidated note to SunTrust's nominee, MERS, in the principal aggregate amount of $417,000, with interest to accrue at 6.5 percent per annum (the "Consolidated Note"). See Interest-Only Period Adjustable Rate Note (docketed on Apr. 7, 2022) ("Consolidated Note"), DE #21-7 at 8-13; CEMA, DE #21-7 at

---

[3] As discussed *infra*, much of plaintiff's supporting documentation has been submitted as a single, unwieldy attachment, consisting of an affidavit with sub-attachments that span almost 250 pages; the particular sub-attachment cited in the text above is part of "Exhibit G" to the Declaration of Stephen J. Vargas (the "Vargas Declaration"). See generally Exhibit G (docketed on Apr. 7, 2022), DE #21-7. For ease of reference, any citation to Exhibit G, or to any other record citation in this opinion that likewise includes numbers following the corresponding docket entry (DE #), refers to page numbers imprinted by the ECF system, as opposed to internal page numbers.

3

28-68; Compl. ¶ 9. In addition to consolidating Nanan's two original promissory notes, the CEMA also consolidated the July 14, 2006 Mortgage and the June 22, 2007 Mortgage (the "Consolidated Mortgage"). See CEMA, DE #21-7 at 28-68; Compl. ¶ 12. This agreement resulted in a single debt instrument and lien in the principal amount of $417,000. See Compl. ¶ 12. The CEMA, together with the Consolidated Note and the Consolidated Mortgage, was recorded in the City Register of the City of New York, Queens County, on July 11, 2007, under CRFN 2007000352892. See id.

Thereafter, a series of assignments of the Consolidated Mortgage occurred, with a final assignment on March 26, 2019, making U.S. Bank the assignee. See Affidavit of Mario Selva, Assistant Vice President of Rushmore Loan Management Services LLC[4] (docketed on Apr. 7, 2022) ("Selva Aff.") ¶ 5, DE #21-7 at 2.[5]

---

[4] Rushmore Loan Management Services LLC is the loan servicer for U.S. Bank for the loan at issue here. See Selva Aff. ¶ 1, DE #21-7 at 1.

[5] According to an exhibit to the final Assignment of Mortgage ("U.S. Bank Mortgage Assignment"), the first assignment, from MERS to SunTrust, occurred on May 2, 2011, and was recorded on June 14, 2011, in the Queens County Clerk's Office (CRFN 2011000209809). See Exhibit A to U.S. Bank Mortgage Assignment (docketed on Apr. 7, 2022), DE #21-7 at 83; see also Compl. ¶ 13. On June 29, 2011, a second mortgage assignment was made by MERS to SunTrust, as recorded on July 27, 2011, in the Queens County Clerk's Office (CRFN 2011000264531). See SunTrust Mortgage Assignment (docketed on Apr. 7, 2022), DE #21-7 at 70-72; see also Exhibit A to U.S. Bank Mortgage Assignment, DE #21-7 at 83. A corrective assignment of the Consolidated Mortgage to SunTrust was recorded on October 5, 2012. See Corrective SunTrust Mortgage Assignment (docketed on Apr. 7, 2022), DE #21-7 at 73-76; see also Exhibit A to U.S. Bank Mortgage Assignment, DE #21-7 at 83; Compl. ¶ 14. An assignment of mortgage was then made on December 2, 2015 by SunTrust to PennyMac Holdings, LLC ("PennyMac"), which was recorded on December 21, 2015 in the Queens County Clerk's Office (CRFN 2015000450013). See PennyMac Mortgage Assignment (docketed on Apr. 7, 2022), DE #21-7 at 77-79; see also Exhibit A to U.S. Bank Mortgage Assignment, DE #21-7 at 83. Finally, on March 22, 2019, the Consolidated Mortgage (as modified by a modification agreement noted in the text that follows) was assigned by PennyMac to U.S. Bank, and the assignment was recorded in the Queens County Clerk's Office (CRFN 2019041100469001). See U.S. Bank Mortgage Assignment, DE #21-7 at 80-83.

4

Meanwhile, on July 15, 2018,[6] Nanan executed and delivered a modification agreement to PennyMac, modifying the CEMA, the Consolidated Note, and Consolidated Mortgage (the "Modification Agreement"). See Modification Agreement (docketed on Apr. 7, 2022), DE #21-7 at 15-24. Under the terms of the Modification Agreement, the new principal balance owed by Nanan was $474,316.92. See id. at 17. The Modification Agreement further provided that only $299,374.02 of this new principal balance would accrue interest, at a dynamic rate, as set forth in the interest schedule therein; the remaining balance amount of $174,942.90 was to be treated as deferred and, accordingly, would not accrue interest. See id. Plaintiff alleges that on November 21, 2018, an unidentified "prior servicer advanced $1,346.79 and increased the modified [non-interest-bearing] principal balance by this amount to $176,289.69." Selva Aff. ¶ 6, DE #21-7 at 2.

According to the Complaint, after U.S. Bank was assigned the operative mortgage, Nanan defaulted on his financial obligations under the Modification Agreement by failing to make the required installment payment on April 1, 2019, as well as subsequent payments. See Compl. ¶ 18. Following his default on the loan (and the commencement of this action), Nanan reportedly made certain additional payments, but these were ultimately insufficient to cure his default and/or reinstate the loan. See Selva Aff. ¶ 12, DE #21-7 at 3. U.S. Bank is in possession of the Promissory Note dated June 22, 2007, and was in possession of that Note when it commenced this foreclosure action on February 17, 2020. See id. ¶¶ 3-4.

---

[6] The Vargas Declaration incorrectly asserts that the date of the Modification Agreement is July 1, 2018. See Vargas Decl. ¶ 6, DE #21.

5

**PROCEDURAL BACKGROUND**

On February 17, 2020, plaintiff commenced this foreclosure action against Nanan (as well as the Control Board as a subordinate lienholder). Plaintiff served Nanan, who failed to answer or otherwise respond to the Complaint. See generally Compl.; see Summons Returned Executed for Rohit Nanan (docketed on Oct. 12, 2020) at 1, DE #7. It is unclear whether plaintiff ever served the Control Board, as the affidavit of service docketed by plaintiff relates to an entirely different case and agency defendant. See Summons Returned Executed for the New York City Environmental Control Board (docketed on Oct. 12, 2020) at 1, DE #8. The Control Board never appeared in this action.

On May 19, 2021, in light of New York's moratorium on foreclosure actions due to the COVID-19 pandemic, this Court directed plaintiff to file, by May 26, 2021, "a status report as to whether a Hardship Declaration with Notice was sent to [Nanan] and whether a Hardship Declaration was received by plaintiff[.]" Status Report Order (May 19, 2021). Plaintiff failed to comply with the Court's order. The Court then directed plaintiff to cure its omission and file its status report by June 1, 2021, on pain of sanctions. See Status Report Order (May 27, 2021). As plaintiff again ignored the Court's directive, plaintiff was ordered to show cause, in writing, by June 8, 2021, why it should not be sanctioned, including by dismissal of plaintiff's action, for its repeated noncompliance with the Court's orders. See Order to Show Cause (June 3, 2021). Despite this warning, plaintiff persisted in failing to respond.

On June 17, 2021, in light of plaintiff's repeated flouting of court orders, the undersigned magistrate judge issued a *sua sponte* Report and Recommendation ("R&R"), in which the Court found that plaintiff's violations and unresponsiveness evidenced "its continued

6

disinterest in pursuing its claims"; accordingly, the Court recommended that the District Court dismiss the Complaint with prejudice for lack of prosecution. See *Sua Sponte* Report and Recommendations re . . . Complaint (June 17, 2021) at 1-2, DE #9. Plaintiff never filed an objection to the R&R.

More than three months passed before plaintiff took any further action in the case. Finally, on September 27, 2021, instead of applying to the District Court to reopen the long-expired deadline for filing objections, plaintiff asked this Court for additional time to respond to the Court's June 3, 2021 Order to Show Cause. See Motion for Extension of Time to File Response/Reply (Sept. 27, 2021) at 1, DE #10. This Court denied the belated application without prejudice and directed plaintiff to submit any future extension request to Judge Kovner. See Order (Sept. 27, 2021). Plaintiff then filed a second request, addressed to the District Court, for an extension of time to respond to the June 3, 2021 Order to Show Cause. See [Second] Motion for Extension of Time to File Response/Reply (Sept. 29, 2021) at 1, DE #12. Judge Kovner subsequently denied plaintiff's extension request, and adopted in part the *sua sponte* R&R; in lieu of dismissing the case, she imposed a sanction in the amount of $1,000 upon plaintiff's counsel. See generally Memorandum and Order (Jan. 24, 2022), DE #13.

On February 4, 2022, plaintiff moved for a certificate of default against both defendants, see generally Request for Certificate of Default (Feb. 4, 2022), DE #16, and the Clerk of the Court entered two notations of default, see Clerk's Entry of Default (Feb. 11, 2022) at 1, DE #17. Almost two months later, on April 7, 2022, plaintiff filed the instant motion for default judgment, requesting—in addition to a substantial damages award—that the

7

Court enter a judgment of foreclosure and sale of the Subject Property, pursuant to RPAPL §§ 1351 and 1354. See generally Pl. Mot., DE #19; Pl. Mem., DE #23.

Following Judge Kovner's referral of plaintiff's motion for default judgment, see 4/8/22 Referral Order, plaintiff's counsel filed a status report advising that plaintiff and Nanan were engaged in settlement discussions, see Status Report (Apr. 22, 2022) at 1, DE #24. Plaintiff subsequently reported that Nanan (who never entered an appearance in this action) failed to respond to plaintiff's proposed loan modification agreement. See Status Report (docketed on May 9, 2022) at 1, DE #26. The Court issued an order warning Nanan that if he did not respond to plaintiff's proposed loan modification agreement, the Court would set a deadline for him to respond to plaintiff's motion for default judgment.[7] See Order (May 11, 2022). Plaintiff later reported Nanan had not responded. See Status Report (May 24, 2022) at 1, DE #27.

On May 25, 2022, the Court instructed Nanan, by June 13, 2022, to file and serve his response to plaintiff's motion for default judgment, which would otherwise be "treated as unopposed . . . ." Order (May 25, 2022) ("5/25/22 Order"), DE #28.[8] Nevertheless, Nanan failed to respond.

## DISCUSSION

Having reviewed plaintiff's motion for default judgment, as well as the corresponding affidavits and attachments, the Court has identified certain critical deficiencies therein, which

---

[7] Plaintiff ignored the Court's directive that it serve the May 11, 2022 Order on Nanan and file proof of service, resulting in yet again another directive that plaintiff cure its omission. See Order (May 18, 2022).

[8] The Court encouraged Nanan to schedule an appointment with the Federal *Pro Se* Litigation Assistance Project and provided him with the relevant contact information. See 5/25/22 Order.

warrant denial of the motion. The Court will nevertheless afford plaintiff the opportunity to submit a renewed motion that addresses these deficiencies, specifically those related to the substantiation of plaintiff's alleged damages, as outlined below.

### I. General Deficiencies in Plaintiff's Submissions

For all that appears in the record, plaintiff's counsel, Stephen J. Vargas, has made no meaningful effort to review plaintiff's voluminous submissions in connection with the pending motion, nor has he organized these documents in a presentable and digestible form for the Court's review. Plaintiff's submissions include documents that are either unlabeled or are lumped together and not readily retrievable or distinguishable from one another. See, e.g., Exhibit G, DE #21-7 (248-page attachment including more than 10 different sub-exhibits and several unlabeled documents). In addition, as previously noted in footnote 2, plaintiff has, without explanation, filed two separate memoranda of law on the same day, prompting a side-by-side comparison by the Court to ascertain the differences between the two and the reason for the seemingly duplicative filing. Compare generally [First] Memorandum in Support of Motion for Default Judgment (Apr. 7, 2022), DE #20, with Pl. Mem., DE #23. Further evidencing counsel's lack of care, plaintiff docketed a grouping of documents apparently not intended to be filed, as they bear the label "DO NOT SEND TO COURT[.]" See Exhibit G, DE #21-7 at 216-48 (conglomerate of undistinguished documents labeled as "SUPPORTING DOCUMENTS (DO NOT SEND TO COURT)"). In sum, plaintiff has filed what can only be described as a document dump through which the reviewer must hunt and peck to locate specific materials.[9] But the Court need not and will not scour in excess of 500 pages of

---

[9] Notably, as further described in a later section of this opinion, Mr. Vargas filed the instant motion after this Court had admonished him for similar deficiencies in his submissions made on behalf of U.S. Bank in connection

documents to find particular records that may or may not correspond to the perfunctory allegations contained in plaintiff's memorandum of law and affidavits. The responsibility for organizing, explaining, and specifically citing evidentiary submissions rests with the party moving for default judgment, not with the Court.

## II.    Plaintiff's Failure to Support its Damages Request

Even assuming that a defaulting defendant's liability has been established,[10] the plaintiff must nevertheless substantiate the damages requested, and the court has discretion to determine the sufficiency of the plaintiff's evidentiary submissions. See E. Sav. Bank, FSB v. Beach, No. 13–CV–0341(JS)(AKT), 2014 WL 923151, at *9 (E.D.N.Y. Mar. 10, 2014). "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." Garpo Marine Servs. Inc. v. Island Romance, 19-CV-6875-EK-SJB, 2021 WL 6805890, at *8 (E.D.N.Y. Sept. 30, 2021) (citation omitted), adopted, 2022 WL 341194 (E.D.N.Y. Feb. 4, 2022). In this case, quite apart from the shambolic state of its submissions, plaintiff has failed to establish to a reasonable certainty the amount of damages that it demands.

Plaintiff seeks an award of damages in the aggregate amount of $490,687.45.[11]  See Statement of Damages at 2, DE #21-11.  More specifically, plaintiff asserts that of this

---

with a motion for default judgment in another foreclosure action: U.S. Bank National Association v. Swezey et al., 20-cv-91 (E.D.N.Y.). Mr. Vargas therefore had ample notice and opportunity to draft and prepare the instant motion (which seeks relief similar to that sought in Swezey) in a careful and professional manner, rather than docket submissions that suffer from nearly identical shortcomings.

[10] For purposes of this opinion, the Court assumes, but does not opine on, defendants' liability.

[11] This amount differs from the aggregate damages amount set forth in plaintiff's Proposed Judgment, which reflects $490,362.45 in total damages. See Proposed Judgment at 2, DE #21-12. Plaintiff provides no explanation for this discrepancy.

10

amount, $466,537.31 is owed in outstanding principal. See id. at 1. Yet the justification for a damages demand of nearly half a million dollars occupies a mere two pages of plaintiff's memorandum of law (as compared with the nearly 11 pages devoted to a discussion of diversity jurisdiction). See Pl. Mem. at 19-21, DE #23. These two pages contain a single record citation—to Exhibit G (i.e., the Selva Affidavit) to the Vargas Declaration (DE #21-7)— with no pincites to paragraphs thereof or to its multi-page attachments, despite the voluminous nature of a number of the appended exhibits. See Pl. Mem. at 20, DE #23. The cited exhibit is 248 pages long and includes loan documents, assignments, and numerous other documents. To quote an opinion involving similarly deficient submissions by the same counsel on behalf of the same plaintiff: "Plaintiff cannot expect the Court to sift through its supporting documentation while engaging in guesswork to figure out how [p]laintiff reached the amounts stated in the [accompanying] Affidavit" or plaintiff's other submissions. U.S. Bank National Association v. Kozikowski, 19-CV-00783 (DLI) (CLP), 2022 WL 4596753, at *8 (E.D.N.Y. Sept. 30, 2022).

     More importantly, and contrary to plaintiff's assertions, see Pl. Mem. at 19-21, DE #23, the Selva Affidavit and the payment history attached thereto are insufficient to demonstrate plaintiff's entitlement to the amounts that plaintiff demands in damages. Nowhere in the Selva Affidavit does plaintiff specifically state how many payments Nanan made, or in what amount(s), prior to his alleged default in payment on April 1, 2019.[12] And while the Selva Affidavit acknowledges that Nanan made payments after the commencement of this action, plaintiff provides no information about the dates or amounts of these payments, merely

---

[12] The Complaint, plaintiff's memorandum of law, and the Vargas Declaration are all silent as to this critical detail.

asserting instead that they "were insufficient to cur [sic] the default[.]" Selva Aff. ¶ 12, DE #21-7 at 3.[13]

Despite the lack of any specific reference by plaintiff or either of its two affiants, the Court was able to locate, buried in plaintiff's submissions, its five-page "Payment History" (which contains no entries predating 2019). See Payment History (docketed on Apr. 7, 2022), DE #21-7 at 85-89. That unexplained and apparently incomplete chart is no more illuminating. The listings fail to unambiguously identify which entries—for which there are multiple types of designations—denote Nanan's payments, and plaintiff offers no guidance on how to interpret this document so as to calculate the principal balance or the other types of damages. See id. Without this information, the Court cannot verify plaintiff's contention that there remains $466,537.31 in unpaid principal balance (or, by extension, the claimed amount of accrued interest). See, e.g., OneWest Bank, N.A. v. Hawkins, No. 14 CV 4656(NGG), 2015 WL 5706945, at *8-9 (E.D.N.Y. Sept. 2, 2015) (in a foreclosure action, court denies without prejudice plaintiff's request for an award of the outstanding principal balance, interest, and other damages, where plaintiff provided an affidavit and "computer 'screen-print' that allegedly summariz[ed] the payoff calculations" but "failed to sufficiently explain the figures on the screen-print[,]" so as to allow the court to verify the balance claimed to be owed by defendants), adopted, 2015 WL 5706953 (E.D.N.Y. Sept. 28, 2015).

Other deficiencies in plaintiff's submissions make it extremely difficult, if not impossible, to verify the outstanding principal balance owed by Nanan. By way of example

---

[13] Plaintiff's summary of "the total amounts due" appears to have "credited" Nanan in the amount of $1,377.11. See Selva Aff. ¶ 12, DE #21-7 at 3. However, as plaintiff fails to explain what these "Credits to Borrower" represent, it is unclear whether they represent payments made by Nanan on his outstanding financial obligation to U.S. Bank.

12

only, plaintiff asserts that the deferred non-interest-bearing principal balance increased from $174,942.90 (the amount specified in the Modification Agreement), see Modification Agreement, DE #21-7 at 17, to $176,289.69 (the amount requested by plaintiff in the Selva Affidavit), see Selva Aff. ¶ 6, DE #21-7 at 2. While referencing an advance (or advances) made by a previous loan servicer, see id., plaintiff fails to specify which loan servicer advanced the amount alleged and when. Plaintiff does not discharge its burden by its conclusory assertion that Nanan was loaned an additional $1,346.79, without providing documentary support for this debt. The Court cannot determine the amount of principal balance to award where, as here, there is insufficient information in the record to substantiate the amount requested. See, e.g., Lightning 1179 LLC v. Rodriguez, 17-CV-6311 (MKB) (ST), 2020 WL 7000902, at *7 (E.D.N.Y. Sept. 18, 2020) (on a motion for default judgment in a foreclosure action, court declines to award damages, given plaintiff's failure to explain its calculations and the "lack of evidence regarding the number of payments made towards the principal and the inconsistencies in the record"), adopted, 2020 WL 6042000 (E.D.N.Y. Oct. 13, 2020); Hawkins, 2015 WL 5706945, at *8-9; OneWest Bank, N.A. v. Vaval, 14-CV-3437 (CBA) (PK), 2016 WL 3945342, at *3 (E.D.N.Y. July 19, 2016) (in a foreclosure action, court denies without prejudice plaintiff's request for unpaid principal and interest where it "failed to adequately support the amounts requested" with documentation and/or explanation).

In the short portion of its memorandum of law addressing damages, plaintiff cites a series of judicial opinions issued out of this District in which, plaintiff argues, damages in foreclosure actions have been awarded based on similar submissions of records proffered through affidavits of employees of loan servicers. See Pl. Mem. at 20-21, DE #23. As an

initial matter, plaintiff's string citation includes a number of cases that simply do not support the proposition for which they have been cited. For example, the decision in Hawkins (previously discussed herein, see *supra* page 12) found the plaintiff's evidentiary showing to be insufficient and denied plaintiff's demand for the outstanding principal balance, interest, and other damages. See 2015 WL 5706945, at *8-9. And in CIT Bank, N.A. v. Escobar, 16-CV-3722 (JFB)(SIL), 2017 WL 3614456 (E.D.N.Y. June 16, 2017), adopted, 2017 WL 3634604 (E.D.N.Y. Aug. 18, 2017), the court granted the plaintiff's motion for summary judgment against the homeowner but did not address damages.

To be sure, plaintiff cites decisions in other foreclosure cases—most predating 2020—that have awarded damages based on similarly meager showings, reasoning that, by virtue of the defendant's default, the plaintiff's calculations were "undisputed." See, e.g., OneWest Bank, NA v. Serbones, 14-CV-7281 (RJD)(MDG), 2016 WL 1295197, at *4 (E.D.N.Y. Mar. 7, 2016), adopted as modified, 2016 WL 1306545 (E.D.N.Y. Mar. 31, 2016); OneWest Bank, NA v. Raghunath, No. 14-CV-3310 (RJD)(MDG), 2015 WL 5772272, at *4 (E.D.N.Y. Sept. 8, 2015), adopted, 2015 WL 5774784 (E.D.N.Y. Sept. 29, 2015). With all due respect to the authors of those opinions, such an approach runs counter to Second Circuit precedent. "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) (citations omitted). Thus, a court considering a motion for default judgment "[sh]ould not just accept [the plaintiff's] statement of the damages[,]" but instead must "satisfy [its] obligation to ensure that the damages [are] appropriate." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d

14

105, 111 (2d Cir. 1997). In that connection, it is the plaintiff's burden "to establish damages with reasonable certainty." Id. For the reasons detailed above, this Court concludes that the boilerplate Selva Affidavit, which simply attaches voluminous records without citation or explanation, fails to satisfy plaintiff's burden.[14]

In conclusion, it bears highlighting again that the deficiencies detailed in this opinion are hardly an isolated aberration on the part of this plaintiff and its counsel. In the case at bar, plaintiff's inadequate motion papers were preceded by a pattern of inactivity and flouting of court orders, which nearly caused dismissal of the action with prejudice (but instead resulted in monetary sanctions on plaintiff's counsel). And in at least two recent foreclosure actions, U.S. Bank's motions for default judgment—which likewise were submitted by Mr. Vargas—have either been denied in part or denied without prejudice on account of deficiencies similar to those identified by this Court. See, e.g., U.S. Bank Nat'l Ass'n as Tr. for RMAC Tr., Series 2016-CTT v. Swezey, 20-CV-91 (FB) (RLM), 2022 WL 1422841, at *8-12 (E.D.N.Y. Mar. 24, 2022) (admonishing plaintiff for failing to account for all the draws and payments on the defendants' line of credit, and recommending that U.S. Bank's request for contractual interest, as well as certain disbursements and costs, be denied because U.S. Bank failed to provide adequate documentation thereof, even after being directed three times to supplement its

---

[14] The Selva Affidavit repeatedly alludes to records alleged to be attached thereto, with no indication whatsoever as to where in the undifferentiated mass of attached documents the referenced record may be found. See Selva Aff. ¶¶ 3, 5-10, DE #21-7 at 2-3. Contrary to plaintiff's contention, see Pl. Mem. at 21, DE #23, the Selva Affidavit is in no way "analogous" to the affidavit of the plaintiff's asset manager in Miss Jones LLC v. Brown, 17 Civ. 898 (NGG)(VMS), 2020 U.S. Dist. LEXIS 148140, at *21 (E.D.N.Y. Aug 14, 2020), adopted, 2020 U.S. Dist. LEXIS 166633 (E.D.N.Y. Sept. 8, 2020); there, the referenced affidavit, which attached only five *separately numbered* exhibits totaling 19 pages, included citations to specific numbered exhibits, see DE #35-8 in 17-cv-898. Notably, the court in that case awarded only those charges that it was able to confirm from a review of the proffered documents, and declined to award unexplained "corporate advance charges" from a prior loan servicer. See 2020 U.S. Dist. LEXIS 148140, at *21-22.

15

submissions to cure those same deficiencies), adopted, 2022 WL 2390989 (E.D.N.Y. July 1, 2022) (adopting R&R over U.S. Bank's objections); Kozikowski, 2022 WL 4596753, at *9-10 (finding U.S. Bank's "submitted transaction records" to be insufficient evidence from which to calculate its damages, court denies its motion for default judgment without prejudice). At the time that the instant motion was filed, plaintiff and its counsel were therefore well aware of what evidentiary documentation is required to support a damages award in a foreclosure action.

Accordingly, given the aforesaid deficiencies in plaintiff's submissions, plaintiff's motion for default judgment is denied. Despite plaintiff's pattern of derelictions in this and other cases, U.S. Bank will be afforded one final opportunity to cure its many deficiencies: its motion for default judgment is therefore denied without prejudice. See, e.g., Kozikowski, 2022 WL 4596753, at *10 (denying motion for default judgment without prejudice); see also Hawkins, 2015 WL 5706945, at *8-9, *12 (recommending denial of damages request without prejudice).

## CONCLUSION

For the foregoing reasons, this Court denies without prejudice plaintiff's motion for default judgment, with leave to file a renewed motion addressing the aforementioned deficiencies.

Any objections to this Memorandum and Order must be filed with the Honorable Rachel P. Kovner on or before October 31, 2022. The Clerk is respectfully requested to docket this Memorandum and Order into the ECF court file and to send copies to defendants at the following addresses:

16

Rohit Nanan
129-19 145th Street
Jamaica, New York 11436

New York City Environmental Control Board
100 Church Street
New York, New York 10007

New York City Environmental Control Board
66 John Street, 10th Floor
New York, New York 10038

**SO ORDERED.**

Dated:   Brooklyn, New York
         October 14, 2022

*/s/* *Roanne L. Mann*
**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**